May it please the Court, Jordan Gross on behalf of Matthew Davidson, and I'm going to reserve two minutes for rebuttal. Before I begin my argument, I would like to alert the Court that one of the cases we relied on in support of our Sixth Amendment argument, United States v. Greer, which came out of the Middle District of Georgia, was vacated and remanded since the briefing was completed in this case. So we – although we stand on that argument, we do withdraw our reliance on that particular case in support of the argument. Mr. Davidson's appeal is about one thing and one thing only, and that is prior convictions. And the two issues we've put before the Court are when and how the government can use prior convictions to prove a felon in possession case, and also how prior convictions must be proven before a defendant can be subjected to a mandatory minimum under the Armed Career Criminals Act or related sentencing enhancements. I'd like to focus my arguments this morning primarily on the second part and primarily on the district court's finding that Mr. Davidson was an – had on Mr. Davidson's sentence. We've raised two issues with respect to this finding. One, whether Mr. Davidson was entitled under the Sixth Amendment to a jury finding on all the facts regarding his prior convictions, and also whether the government's documentation is adequate to satisfy this Court's standard of proof under the modified categorical approach. Taking the second argument first, this Court relatively recently, in United States v. Kelly, held that the record of conviction for predicate felonies must unequivocally establish that the defendant pled guilty to the elements of a crime of violence. And this Court has described the standard as a rigorous one. And I submit to the Court that the government's documentary proof in this case does not meet that rigorous standard. As you know, the four convictions at issue are Mr. Davidson's four 1983 burglary convictions. We haven't challenged reliance on the assault conviction or on the burglary conviction from the 90s. But these four convictions are critical because without them, Mr. Davidson wouldn't be subject to a sentencing enhancement or to a 15-year mandatory minimum under the ACCA. If they are burglaries of residences, are they crimes of violence? Under the modified categorical approach, yes, Your Honor, they are. And that's exactly our contention, is that that is not shown by the documentary proof. And at best, the proof is ambiguous, and that's not sufficient to meet the rigorous standard. What the government has to show is that because it's under Washington law, which this Court has repeatedly acknowledged is broader or defines its burglary broader than the generic Federal approach, the government has to show unequivocally that it involved a structure or a building. But the broadness of the Washington statute has to do with whether there can be a burglary of a container or something which is not a common law building. But here, as I remember the documents of conviction, he pleaded guilty to a burglary of a residential addressed building. Isn't that so? Did I miss something? That's the point that is ambiguous, Your Honor, is whether, and that is the focus of our argument, is whether the proof shows unequivocally that it is a structure or building. Now, if you look at the information, which is at ER 58, there are no mentions of buildings or structures. There are addresses. There are addresses? That's correct, Your Honor. I mean, do we have addresses of vacant lots in Washington? Well, no, Your Honor, but you could have an address of a, you know, a fence corral, which is something that qualifies as a building. Particularly, these are all rural addresses. You could have an address that involves a structure or something that would not qualify as a building or structure under the common law. But weren't they residences also? Well, that's the point, Your Honor. And I don't think this is, just looking at the information is not dispositive. I don't think it's enough just to have a street address. If you go to the plea agreement, that also does not satisfy the inquiry. It's only by reference to what I'm calling the first and second attachments to the plea statement, which are, there's a C attached in the plea statement, but there's nothing to say which attachment you're referring to. So you have these two documents that are appended that are untitled, that are severely, severely marked up. They are uninitialed. They are undated. And even looking at that, for example, with respect to count two, all it says is a building. It doesn't say a residence. It doesn't say a structure. Now, if you go down to counts, and I'm looking at ER 65, Your Honors. If you go to counts three, four, and five, those do, this is in the first attachment, those do reference a residence. But then you have a different problem, which is the dates on some of these don't line up with the dates in the information. And this, these problems aren't resolved by looking at the second attachment, because looking at the second attachment just brings up further ambiguities and inconsistencies in these documents. And what I'm submitting to you on. One attachment, he says, the following is a statement of what I did, C attached. But only one of the two attachments really talks about what he did. Correct. And that's to enter a residence. Well, one of them, count two never says residence. Nowhere. Nowhere in any of these documents is there anything saying that count two involved a residence. Nothing. Only with counts three, four, and five, those say residence. But as I said, those don't even have the right dates. Those aren't the correct dates. What he says is there are tremendous ambiguities between the dates that are listed in the information. Because what the plea statement says is I am, I am pleading guilty to the information. Of course, I'll point out it's actually the third amended information. It's not even the original information, which is what it's referencing. But it must be the one he pleaded to. It's the only one that's still out at the time he pleaded. That's correct. So he says I'm pleading to the information. The information says nothing about a residence. It does have dates. And it does have the names of people involved or, excuse me, the addresses. So he says, well, I'm pleading to the first or the original information, which we now know is the third amended information, and then see attached to see what I did. You see attached to see what I did. And many of these dates don't even line up with the first, with the third amended information. So my question to this Court is how can that satisfy the rigorous standard of proof if the dates don't even match up? Setting aside what account two doesn't even have a residence. But then if you look at several of the other accounts, the dates are just incorrect, flat-out incorrect. And so this is a document that is, and I'll show it to you, Your Honors, Attachment 1 has big X's through it, handwritten information on it. It's uninitialed. It's unsigned. The dates are incorrect. Well, the only ambiguity is whether he's pleading guilty to more events, the ones that show the information and the dates which show in the attachment. Maybe there are six and not three. I, I, that's not how I read it, Your Honor, because it says here in the first attachment, it says count three. And it references back. And so if you look at count three, the date's just wrong. So it's not, you know, he's, he's, he's pleading to account three, but we don't even know. I guess the point is really, Your Honor, that this information is just not reliable. It simply is not, and it's not enough to support the district court's findings because of all these problems with the information that it relied on. And so it really is, the question is whether under this rigorous standard, should the court be cabined, the district court be cabined to reliable documents, which are the information, which are the plea statement, the plea colloquy. And, and the courts have looked at what kind of documents can you look at. And you can't go outside of these, a, a fairly strict category of information. And I, I submit to you that these first and second attachments fall outside that category because they so, are so inherently reliable. And without the first and second attachments, there is not sufficient proof that these counts, these four counts in 1983 involved a building or a structure. And, Your Honor, I see I'm well into my rebuttal time, so I would like to wrap up with that, unless you, the court has questions at this point. Thank you. We will add a minute to your time. I think it's planned a 2 minute, 15 second rebuttal. And we won't take appellant's extra minute away from you, so. Thank you, Your Honor. Please go ahead. May it please the Court. My name is Andrew Freedman, and I represent the United States. Because Mr. Davidson's counsel is focused on the sentencing issue, the armed career criminal issue, let me begin with and focus on that. As this Court knows, in order to qualify for sentencing as an armed career criminal, the defendant has to have been convicted of three violent felonies committed on separate occasions. There's no dispute about a 1982 assault conviction and a 1991 burglary case 2 conviction. So the only question is, do any of the counts of conviction in the 1983 judgment satisfy the standard and qualify as the third conviction? That's important, because a lot of the arguments that Mr. Davidson's counsel have made go only to two of these counts. They go to counts 2 and 3. There is no inconsistency in the documents relating to counts 4 and 5, and this Court would only need to find that one of those counts qualifies. And so any argument about a deficiency in the language in count 2, the fact that there's no reference to a residence relating to count 2, it doesn't matter because there is much stronger evidence on the other counts. Which ones? What's the strong evidence? Counts 4 and 5 are the two strongest. In counts 4 and 5, the indictment lists, says it's a burglary, and lists an address. This Court has said previously in Kilgore that a reference to a common street address is enough. In addition, the handwritten ---- I say you entered a building at a common street address. Is that what this said? Correct. Let me just turn back for a moment. But I believe that's exactly what it says. It does. In each count, it says a building and a street address and lists the street address. And that's at AR 58. But then when we get to these ---- If it's a rural address, I wonder if that makes a difference. If you enter a fenced yard, you're entering a building under Washington law. You could theoretically. But in this case, that doesn't matter because then we get to the statement of defendant on plea of guilty. And for counts 4 and 5, it gives both the address and describes it as a residence. And under Bonat, the mere description as a residence is enough. So the language is enough for Kilgore. It's enough under Bonat. Now, opposing counsel says you can't tell whether his plea statement is connected to the ---- Yeah. It's just a piece of paper. We don't know what it is. What's your response? Your Honor, this is ---- I mean, that argument would apply to every judgment from every court in every case. This is the certified record obtained from the district court, the county court in this case. This was part of the plea document. It's certified as that. It was introduced into evidence as that. It clearly is part of it. It relates to it. Without this page, Mr. Davidson's counsel calls it an attachment. But without this page, there would be no facts. This wouldn't be a complete statement of defendant on plea of guilty. Now, is there no date discrepancy in counts 4 and 5? I see no discrepancy, and the briefs don't raise any discrepancy. The dates match. The names match. Everything matches. The discrepancy on counts ---- you said counts 4 and 5, correct, Your Honor? Pardon? I'm speaking about counts 4 and 5. Yes, I understand. Yes. There is no discrepancy on those two. And on counts 3, the only discrepancy is that the information charges a burglary of a residence at a listed address ---- I'm sorry, of a building at a listed address belonging to a Nathan Melton on November 30th of 1982. The handwritten thing inadvertently writes 1980, so the difference is one digit in the year, but it's the same address, the same owner. So even that is a very minor discrepancy. The other point is that I would make is what Mr. Davidson's counsel refers to as the second attachment, and that's at pages ER66 and 67. Mr. Davidson's counsel argues, oh, here we've got another document with all kinds of extraneous information. It shows that there's tremendous unreliability. What that is is that's two pages of people who are owed restitution under this agreement. They're not victims of the named counts. They're people entitled to restitution. You'd expect those to be different names and different addresses, and that document is also referred to explicitly in the numbered pages of the plea agreement. If the Court looks at ER63, there's an agreement in there to pay restitution at the top. It says, pay restitution to all crimes on prosecutor's list. That is the prosecutor's list. So these pages, which Mr. Davidson's counsel refers to as attachments, are integral parts of the plea agreement. And as to counts 4 and 5, there is no discrepancy. There's no inconsistency. There's no suggestion of unreliability as to those counts. The only suggestion, the only real inconsistency is the handwritten date, which is off by two years on a different count. And I would also point out that in the trial court, Mr. Davidson didn't dispute the accuracy of these documents. He didn't suggest that there was a different plea agreement. He didn't introduce a different version of the plea agreement. This is the certified record of the court. It was undisputed. It's in the district court. Your Honor, and so, without any doubt, counts 4 and 5 would qualify, each one would qualify as the third violent felony that qualifies Mr. Davidson to be a non-career criminal. Okay. So 4 and 5 is we've got a charge that he entered a building at an address, and then his handwritten thing says he had a residence at that address. Correct. Is that what you're relying on? That is correct, Your Honor, and the dates are the same. And the court doesn't even need to reach counts 2 and 3, because counts 4 and 5 would be the third and fourth violent felonies. I believe I've already addressed in Mr. Davidson's reply brief there are, in the government's original brief, I addressed and responded to most of the supposed discrepancies. And then in Mr. Davidson's reply brief, Mr. Davidson argued that the government had not dealt with all of those. One, the – but I believe I've now addressed those in the argument. One is the supposed discrepancies, and as I pointed out, there are none relating to counts 4 and 5. The second is an argument that the statement of defendant on plea of guilty doesn't refer to the count, the specific crime or degree of burglary of which Mr. Davidson was convicted. As the government's already argued in its original brief, there's no legal requirement that it do that, but that's also not the case. If you look at SCR 162, which is one of the pages, Mr. Davidson clearly says I'm pleading guilty to four counts of burglary, and then there's a Roman numeral 2 referring to the fact that this is burglary in the second degree. And finally, the point Mr. Davidson argues in his reply brief that there is a great deal of inconsistent – inconsistent information in what he's calling the attachments, and we've discussed what those are already. They're integral parts. They're not inconsistent. They're referred to in the plea agreement. If the Court has any questions on the first point Mr. Davidson didn't argue, but the other question is whether there was error in the admission of convictions at the guilt phase. If the Court has any questions on that, I'd be glad to answer those. I thought it looked fairly parallel to Weiland, to the Weiland precedent. I believe it's different. Your Honor, I understand the parallel. It's different in this case because the government was introducing merely two separate judgments of conviction. When you say parallel, do you mean you thought it was okay under Weiland or that it's different and a problem? Well, I guess I won't state a view until I'm in conference with my colleagues. Okay. I thought the facts were quite similar. Okay. And if I could answer, I think that really this is, one, the government was not trying to get around Judge Burgess's ruling here. The government sought a stipulation when that wasn't forthcoming. We raised the issue at a status conference and said we need to introduce more than one in case there's a problem. Judge Burgess made a sort of tentative ruling that the government would be allowed to introduce two convictions. And there was no discussion of whether that meant two judgments or two counts. The government looked back to the charging document in the case of the information which lists four separate judgments of conviction, picked the two most recent ones that clearly were violent felonies, and that's the 1991 burglary and the 1983 burglary. One of those does contain four counts, but it wasn't an effort to get the most number of counts or to get around. And it never occurred to us that that was inconsistent with Judge Burgess's ruling. We picked basically just the two most recent violent felonies so that we would have two documents, judgments of conviction. But the purpose, if you think of the purpose of his limitation and the purpose of your introducing it, it's by counts, not by judgments. I mean, the armed career criminal thing doesn't talk about how many judgments you've had against your dad. It's how many convictions for crimes of violence, of serious. It's true that there is, I guess, more prejudicial value if there are more counts. It's not something that we were thinking of. We weren't trying to maximize the number of counts. Mr. Davidson has a number of other multi-count convictions. And so there was we didn't pick the two with the most counts. We provided them to defense counsel in advance and said, you know, this is what we're going to introduce. As soon as they, as soon as a defense counsel objected, and they did that after the agent had testified to four counts, we agreed to it. What the jury heard was that there was a judgment with four counts of second-degree burglary. They did hear one reference to four counts. The point, that's true, Your Honor. The document that was admitted did not say that. And we've made the argument, and I think in this case it's clear that even, I think that this was not error under Weiland, but even if it was, it's harmless error in this case because the evidence was overwhelming. And I see my time is up. Did the judge give a further instruction after the jury heard that? The judge did not give a specific instruction that highlighted this. I don't think anyone wanted to highlight the issue, and defense counsel didn't ask for that. One of the instructions given to the jury was that prior convictions were to be considered only to determine felony status, and no other reference was to be taken to that. So there was an instruction that was effectively a limiting instruction. Okay. Your time is up. Thank you, Your Honor. We appreciated the argument. I want to pick back up just on whether these documents are sufficient. As Judge Kadaby pointed out, you know, maybe we don't have the same kind of problems in count four or, excuse me, count, yes, count four and five as we have in two and three. I heard the government concede that there are date discrepancies in two and three, and I would hope that that would be enough to take those out of consideration. So that leaves us with four and five. And what I'm asking the Court to do is not pull it apart. This is one document, and either stands or falls. Either this is okay under Kelley or it's not, this type of documentation. Not whether the particular handwritten information as to, with respect to four is okay and five is okay. I think you just need to look at the document and really take a look at it in the And I will say that I'm not satisfied that this is the only document that is enough under the rigorous standard to add 15 years, a 15-year mandatory minimum to my client's sentence. Well, if we were satisfied that it's part of the State record of conviction. Which it is, Your Honor. Well. It's part of the certified copy of the ‑‑ there are a number of documents that were certified as the record of conviction, and I haven't contested that. What else can it be? Just because it's certified doesn't mean it's enough. And I think that's what this Court's cases are saying. It's a rigorous standard of documentation. Just because a court, a State court certifies a document to you that says, well, here's our judgment of conviction, that doesn't mean that information is sufficient. If it's inconsistent, if it's sloppy, if there are discrepancies in it, that doesn't mean that a Federal court has to accept that for purposes of establishing a predicate felony offense. What it means is my client's conviction on the other count still stands. This is just about the sentencing enhancement. This doesn't knock out any of his underlying convictions. He's still subject to a fairly lengthy Federal sentence for his underlying convictions. So there has to be a certain quality of the proof, regardless of whether it's certified. I don't think that's enough, Your Honor. And in terms of just, you know, what types of buildings were involved, and I heard Mr. Friedman say that the second attachment. Your time is up, and we gave you an extra minute earlier. Thank you. So I think we should bring it to a close. I appreciate it, Your Honor. We would ask you to reverse Mr. Davidson's conviction under Weiland, because I don't think there are significant differences between this case and that. And the alternative, we would ask that you vacate Mr. Davidson's sentence and remand him for resentencing under 18 U.S.C. 3553A without reliance on the armed career criminal enhancement. Thank you very much. Ms. Gross, we thank you, and we thank Mr. Friedman. And U.S. v. Davidson shall be submitted. The next case on our docket.
judges: Canby, Gould, Bea